NO. 07-06-0286-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



AUGUST 31, 2006


______________________________



KATHY M. ATKINSON, APPELLANT



V.



EUSTACE INDEPENDENT SCHOOL DISTRICT, APPELLEE


_________________________________



FROM THE 173RD DISTRICT COURT OF HENDERSON COUNTY;



NO. 16,970-A; HONORABLE DAN MOORE, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Appellant Kathy M. Atkinson appeals the trial court's judgment against her arising
out of a suit brought by appellee Eustace Independent School District for delinquent
property taxes. We will dismiss the appeal. 

 This appeal was transferred to us from the Twelfth Court of Appeals. Before it was 
transferred, the Twelfth Court sent appellant a letter asking that she remit the $125 filing
fee by July 24, 2006. On our receipt of the file, this court, by letter dated July 26, 2006,
also notified appellant that the required filing fee had not been paid. Our letter also
advised appellant that if the fee was not paid by August 7, 2006, her appeal was subject
to dismissal. 

 Appellant responded to the letters by filing "pauper's affidavits" that referred to Rules
of Civil Procedure "749a and/or 749b." (1) In the affidavits, appellant swore that "[she is] not
able to pay all of or part of the costs of appeal" of the judgment "because of [her] financial
condition." She also filed a document entitled "Financial Statement," which describes her
limited income and her medical expenses, (2)
 and states that the costs "would be a financial
hardship to [appellant]."

 On August 7, 2006, this court sent another letter to appellant concerning the filing
fee, referring her to the rule governing indigent appeals in civil cases. Tex. R. App. P. 20.1. 
We advised appellant, "[a]lthough you have filed information with regard to your claim of
indigence, the information provided to date is inadequate pursuant to Rule 20.1(b) of the
Texas Rules of Appellate Procedure. Unless the filing fee in the amount of $125.00 is paid
or you have filed an affidavit containing all the information required to demonstrate
indigence under Rule 20.1(b) by Thursday, August 17, 2006, this appeal will be subject to
dismissal." 

 In response to our August 7 letter, appellant has forwarded (1) copies of delinquent
tax receipts with a note indicating she paid something in excess of $800 in delinquent taxes
in late June of this year, (2) a copy of a notice of appraised value from the Henderson
County Appraisal District, and (3) a copy of a letter from the Social Security Administration
regarding appellant's monthly benefit and health plan premiums. This information does not
establish appellant's indigence for purposes of the rules that govern our consideration of
appeals. 

 Rule of Appellate Procedure 20.1(a) provides that a party who cannot pay the costs
in an appellate court may proceed without advance payment of costs if the party files an
affidavit of indigence in compliance with the rule; the claim is not contested or, if so, the
contest is not sustained; and the party timely files a notice of appeal. (3) Under Rule 20.1(b),
the prescribed contents of an affidavit of indigence include, among other information,
complete information about the party's income and expenses, her real and personal
property assets, and her ability to obtain a loan for court costs. In re J.W., 52 S.W.3d 730,


731-32 (Tex. 2001). The information appellant has provided in response to this court's
letters does not address all the topics listed in Rule 20.1(b). (4) 

 Appellant has thus failed to comply with the requirements of our August 7 letter
giving her a reasonable time to correct the deficiency in her affidavit concerning indigency. 
Tex. R. App. P. 44.3; In re J.W., 52 S.W.3d at 733. She also has failed to comply with the
filing fee requirement. Tex. R. App. P. 5. Accordingly, the required notice to all parties
having been given, we dismiss the appeal. Tex. R. App. P. 42.3(c). 

 

 

 James T. Campbell

 Justice

 



1. Those rules deal with appeals from justice court in forcible entry and detainer
actions. Appellant's appeal is from a judgment of the 173rd District Court of Henderson
County in favor of Eustace Independent School District for delinquent property taxes.
2. The Financial Statement states that appellant has "only one income which is Social
Security income of $935.00 per month and [her] medical expenses exceed [her] income. 
[She] get[s] some assistance with medical expense but the help [she receives] does not
meet all of [her] medical expenses." 

3. The three requirements are listed in the conjunctive in Rule 20.1(a). Rule 20.1(c)
also provides that affidavits of indigence are to be filed in the trial court with or before the
notice of appeal, and provides a procedure for contests to the affidavits. We have no
indication of a contest to appellant's affidavit. One of appellant's pauper's affidavits bears
a file stamp of the Henderson County District Clerk, but neither of the affidavits was filed
with or before her notice of appeal, or within 15 days thereafter. Appellant submitted no
motion for extension of time to file an affidavit of indigency. Tex. R. App. P. 20.1(c)(1), (3). 
We nonetheless evaluate appellant's responses to the court's letters in light of the
requirements of Rule 20.1(a) and (b). See Higgins v. Randall County Sheriff's Office, 193
S.W.3d 898, 899-900 (Tex. 2006) (addressing a similar circumstance).
4. Moreover, as noted, the information appellant has provided indicates she paid over
$800 to the taxing authorities in late June of this year, casting doubt on her claim of
indigency. 


d fails to hint at any reason to question appellant's understanding here. Appellant's
own testimony revealed he is an articulate high school graduate who had been accepted
into a Texas state university, possessed no physical impairment on which he could rely to
avoid military service and "did real, real well" on a nuclear physics examination given by
a Navy recruiter. This evidence indicates appellant was capable of perceiving and
understanding the description of the range of punishment stated by the prosecutor and his
counsel. 

 Having reviewed the entire record, we find nothing that shows he was unaware of
the consequences of his plea, or that he was misled or harmed. Aguirre-Mata II, 125
S.W.3d at 476-77. We conclude the trial court's error of failing to show on the record it
complied with article 26.13 by admonishing appellant on the range of punishment did not
affect a substantial right and was therefore harmless. Id.; Tex. R. App. P. 44.2(b). 

 With respect to appellant's due process argument, we note that unlike the record
in Boykin, 395 U.S. at 240, the record is not silent concerning appellant's reasons for
pleading guilty before the jury but sheds considerable light on that subject. In addition to
his comments to the trial judge concerning the bifurcated procedure he was requesting, as
he began voir dire, appellant's trial counsel told the panel that "there are several reasons
for [his client's plea of guilty]. The truth, that is the main one. And that's what we are here
to lay out before you. We think if we are asking you to do something seriously we better
start from the start being straight. The other reason is we don't want to waste your time. 
We know it's valuable and we appreciate your time. So, with that out of the way . . . ."
Counsel then continued, devoting almost all the rest of his voir dire to inquiries concerning
sentencing, clearly attempting to prepare the prospective jurors to recommend community
supervision for his client. 

 Later, during appellant's testimony on punishment, he and his counsel had this
exchange, concerning his actions toward police after his arrest:


 During that time [after the arrest], did you cooperate with the police?



 Yes, sir.



 You told them exactly what you had done?



 Yes, sir.



 Admitted every part of the offense?



 Yes, sir.



 Just like you have done today?



 Yes, sir.


 Appellant later responded, "Yes, sir," to his counsel's question "You're pleading
guilty because that was true?" Also, from the witness stand, appellant apologized to the
victim, and, in a statement occupying some three-quarters of a page of the record,
addressed his counsel's question asking why the jury should "take a chance on you,"
through community supervision. Appellant also introduced as punishment evidence his
handwritten statement written in jail. Through these instances in the record, and others,
appellant presented himself to the jury as a thoughtful young man who acknowledged a
serious mistake borne of poor judgment but was a good candidate for a "second chance." (5) 
 Further, by virtue of the procedure utilized in appellant's trial, his plea of guilty before
the jury did not involve waiver of all the constitutional rights a criminal defendant typically
waives by pleading guilty. See Aguirre-Mata II, 125 S.W.3d at 475 n.6 (constitutional rights
waived by a guilty plea are privilege against compulsory self-incrimination, and rights to
counsel, trial by jury (6) and confrontation of accusers, citing Boykin, 395 U.S. at 243). Here,
appellant was represented by counsel throughout, was adjudged guilty by the jury and
cross-examined the State's witnesses. 

 Under the circumstances presented, we find the trial court's failure to make a record
clearly reflecting admonishment of appellant on the range of punishment did not equate
to a denial of due process. Boykin, 395 U.S. at 240. His first and second issues are
overruled.

 Appellant's third and fourth issues complain of the trial court's failure to admonish
him of the immigration consequences of conviction. Courts have held such an error is
harmless when the record shows that the defendant is a citizen of the United States. 
Anderson, 182 S.W.3d at 919; Cain v. State, 947 S.W.2d 262 (Tex.Crim.App.1997). 
Appellant's description of the record as "completely silent" as to his citizenship is
inaccurate. It contains an affidavit of financial status signed by appellant which recites his
place of birth as Lubbock, Texas. (7) Because the record affirmatively shows he is a citizen,
we overrule appellant's third and fourth issues.

 Appellant's final two issues complain of the trial court's failure to define deadly
weapon in the jury charge on guilt or innocence. (8) The definitions section of the charge
omitted the statutory definition of deadly weapon, and the application paragraph can be
read to define a knife as a deadly weapon. Appellant concedes the complaints were not
preserved for review by any objection to the trial court and reversal is required only if they
caused harm so egregious as to deprive appellant of a fair trial. Almanza v. State, 686
S.W.2d 157, 171 (Tex.Crim.App. 1984). The harm must be actual, not just theoretical. Id.
at 174; Cormier v. State, 955 S.W.2d 161, 164 (Tex.App.-Austin 1997, no pet.). To
evaluate the actual harm caused by the charge error, we review the entire jury charge, the
state of the evidence, including the contested issues and weight of probative evidence, the
argument of counsel and any other relevant information shown by the record. Almanza,
686 S.W.2d at 171. 

 Appellant cites us to Blanson v. State, 107 S.W.3d 103 (Tex.App.-Texarkana 2003,
no pet.), in which the court found egregious harm from a charge that contained the
instruction, "[a] knife is a deadly weapon." Id. at 105. Here, though, we cannot ignore
appellant's plea of guilty before the jury. His plea established the facts alleged in the
indictment, which included the allegation appellant used or exhibited a deadly weapon. 
See Fairfield, 610 S.W.2d at 776-77; Tex. Pen. Code Ann. § 29.03(a) (Vernon 2003)
(defining aggravated robbery). Too, unlike in Blanson, in which the nature of the unopened
knife as a deadly weapon was a "central issue," id. at 106, the characterization of the knife
as a deadly weapon was not a contested issue at appellant's trial. Further, the knife was
before the jury. The record shows it was a folding or pocket knife, about four inches long
when closed and with a locking, curved serrated blade about two-and-three-quarters inches
long. The investigating sheriff's deputy testified without objection that the knife was
capable of causing serious bodily injury or death. See Tex. Pen. Code Ann. § 1.07(17)
(Vernon Supp. 2006) (defining deadly weapon). We do not agree the record reflects
egregious actual harm flowing from the errors in the jury charge. (9) We overrule appellant's
fifth and sixth issues. 

 Finding no reversible error in the judgment of the trial court, we affirm the judgment.


 James T. Campbell

 Justice





Do not publish.

 
1. John T. Boyd, Chief Justice (Ret.) and Don H. Reavis, Justice (Ret.), Seventh
Court of Appeals, sitting by assignment. 
2. Asking the court to adopt his requested procedure, appellant's trial counsel told the
court, "I have done this in the past, we pled guilty, the jury has gone back, quickly, found
a guilty verdict and then we go directly into the punishment phase. And I think from a
defendant's point of view, that allows a jury to have the satisfaction of finding him guilty
before they decide what they are going to do with him." 
3. Neither does the reporter's record suggest any part of the proceeding was not
transcribed. 
4. Under the procedure employed, it might be said that the trial court did not "accept"
appellant's plea of guilty. The record shows that after receiving the plea, the court
immediately began hearing the State's evidence on guilt/innocence. The court did not
instruct the jury to find appellant guilty, but the court's comments to the jury make clear that
the court expected the jury to render a guilty verdict. Under such circumstances, the
proper procedure is that reflected in Fairfield v. State, 610 S.W.2d 771, 776-77
(Tex.Crim.App. 1981), and other cases, by which the defendant is admonished outside the
presence of the jury. 
5. Appellant's strategy met with some success. Although they did not recommend
community supervision, the jury sentenced appellant to the shortest allowable term of
incarceration. 
6. Nothing in the record shows a waiver of jury trial. See Tex. Code Crim. Proc. Ann.
art. 1.13 and 1.15 (Vernon 2005) (stating manner of waiver of jury trial).
7. See U.S. Const. amend. XIV, § 1; 8 U.S.C. § 1433(a) (each declaring persons born
in the United States as citizens).
8. We note that appellant's issues complaining of the jury charge on guilt/innocence 
treat his conviction as one based on the jury verdict, a view inconsistent with his first four
issues treating it as based on his guilty plea. We nonetheless address the issues.
9. Our conclusion appellant suffered no egregious harm from the charge error also
means his admission of guilt during punishment testimony bars his complaint, under
DeGarmo v. State, 691 S.W.2d 657 (Tex.Crim.App. 1985). Kelley v. State, 22 S.W.3d 628,
631 (Tex.App.--Fort Worth 2000, pet. ref'd) (admission of guilt at punishment waived
charge error).